UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WADE S. BRADLEY,

                         Petitioner,                     Case No. 1:24-cv-997

v.                                                        Honorable Paul L. Maloney

PEOPLE OF THE STATE OF MICHIGAN
et al.,

                         Respondents.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Wade S. Bradley is incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. Petitioner pleaded guilty in the Berrien County Circuit Court to assault with intent to do great bodily harm less than murder or strangulation, in violation of Mich. Comp. Laws § 750.84. On December 21, 2021, the court sentenced Petitioner to 5 to 10 years of incarceration.

On September 24, 2024, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

I.      Actual innocence.

II.     Ineffective assistance of counsel.

III.    Breach of binding contract.

IV.     Failure to raise issue [in an] initial appeal.

(Pet., ECF No. 1, PageID.5–10.) Respondent contends that Petitioner's grounds for relief are meritless.[1] (ECF No. 7.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

**Discussion**

## I.    Factual Allegations

On October 25, 2021, Petitioner pleaded guilty in the Berrien County Circuit Court to one count of assault with intent to do great bodily harm less than murder, in violation of Mich. Comp. Laws § 750.84 (Plea Hr'g Tr., ECF No. 8-11, PageID.287.) In exchange for pleading guilty, the Prosecutor's Office agreed to drop all other charges against Petitioner and agreed to not charge him as a habitual offender. (*Id.*, PageID.288, 291.) During the plea hearing, Petitioner acknowledged that on June 22, 2021, he was inside a home in Benton Township with Lachell Williams. (*Id.*, PageID.293–294.) Petitioner indicated that he and Williams had an altercation, and that he possessed a firearm during the incident. (*Id.*, PageID.294.) Petitioner acknowledged firing the firearm at Williams. (*Id.*) Petitioner acknowledged that his intention "was to have the bullet

---

[1] Respondent also contends that Petitioner's grounds for relief are either unexhausted or procedurally defaulted. (ECF No. 7.) Respondent recognizes, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix, 520 U.S. at 525; Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

2

strike her and to cause great bodily harm." (*Id.*) He indicated that when he shot the firearm, it was pointed at Williams' lower body. (*Id.*, PageID.295.)

The parties appeared before the trial court on December 21, 2021, for Petitioner's sentencing. (Sentencing Tr., ECF No. 8-12.) The court indicated that Petitioner's guidelines called for a minimum sentence between 43 to 76 months. (*Id.*, PageID.301.) However, after sustaining some objections regarding scoring of certain Offense Variables (OVs), the court noted that Petitioner's revised guidelines called for a minimum sentence between 38 and 76 months. (*Id.*, PageID.315.) The court ultimately sentenced Petitioner to 5 to 10 years. (*Id.*, PageID.320.)

On August 9, 2022, Petitioner, through counsel, filed a motion to correct invalid sentence, arguing that Prior Record Variable (PRV) 5 was improperly scored at 20 points. (ECF No. 8-13.) However, on November 21, 2022, the parties entered a stipulation, pursuant to Petitioner's signed declaration, to withdraw the pending motion to correct invalid sentence and to dismiss Petitioner's appeal. (ECF Nos. 8-14, 8-15.) The court entered an order deeming the motion withdrawn and the appeal dismissed that same day. (ECF No. 8-17.)

On or about December 12, 2022, Petitioner filed a *pro per* motion for relief from judgment pursuant to Rule 6.502 of the Michigan Court Rules. (ECF No. 8-18.) Petitioner raised numerous claims in that motion, including: (1) insufficiency of the evidence; (2) ineffective assistance of counsel; (3) that his plea was involuntarily entered because he was forced to enter into a plea agreement; and (4) that a breach of the plea agreement occurred because it included an agreement that he would receive a minimum sentence of 32 months instead of the minimum sentence of 60 months that he received. (ECF No. 8-20, PageID.375.) In an order entered on April 26, 2023, the trial court denied Petitioner's Rule 6.502 motion. (*Id.*) The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal on February 20, 2024,

and August 30, 2024, respectively. (ECF No. 8-21, PageID.377; ECF No. 8-22, PageID.590.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

4

an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). On the other hand, "[i]t is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v.*

*Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances

surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors

as whether there is evidence of factual guilt. While courts may consider whether a factual basis for

a guilty plea exists in their assessments of its validity, it has generally been held that the

Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark*, 984 F.2d

203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an

*Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but

it is not necessary to comply with the Constitution." (quoting *Alford*, 400 U.S. at 37)); *see also*

*Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107,

111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548

(11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*,

529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975);

*Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

        In order to find a constitutionally valid guilty plea, several requirements must be met. The

defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of

the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976);

*Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be

the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of

the defendant" or of state-induced emotions so intense that the defendant was rendered unable to

weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v.*

*United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which

deprive it of the character of a voluntary act, is void."). The defendant must also understand the

consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." (internal quotation marks omitted) (citation omitted)).

Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56–57.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see*

*also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (citing *Harrington*, 562 U.S. at 102) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ").[2]

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an

---

[2] The Michigan Court of Appeals and Michigan Supreme Court issued summary affirmances of the denial of Petitioner's Rule 6.502 motion, denying Petitioner's applications for leave to appeal for lack of merit in the grounds presented. Those affirmances, however, are deemed decisions on the merits of the claims presented that are entitled to AEDPA deference. *See Harrington*, 562 U.S. at 99; *see also Johnson*, 568 U.S. at 298; *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).

objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Not every ineffective assistance of counsel claim survives a guilty plea. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001).

## A.    Ground I—Actual Innocence

In ground I, Petitioner contends that he is actually innocent of the offense to which he pleaded guilty. (Pet., ECF No. 1, PageID.5.) Petitioner supports his innocence argument by stating that video and audio from the address where the offense occurred shows that no shooting occurred. (*Id.*) Petitioner avers that he "had a gun after walking away and police intercepted [him] in [his] car as [he] prepared to leave the rent a room residence." (*Id.*)

10

As an initial matter, Petitioner's ground for relief is not cognizable on federal habeas review. The Supreme Court has stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). But the *Herrera* Court did not close the door completely, stating in dicta that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007).

Two years after *Herrera*, the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme

11

Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. Recently, the Sixth Circuit acknowledged that the actual innocence "equitable-exception [to the AEDPA statute of limitations] doctrine is not a freestanding substantive claim for habeas relief. The Supreme Court has not decided whether actual innocence is a substantive ground for relief." *Hubbard v. Rewerts*, 98 F.4th 736, 742 (6th Cir. 2024); *see also Smith v. Nagy*, 962 F.3d 192, 206 (6th Cir. 2020) (citing *Schlup* and *Herrera* for the proposition that freestanding claims of actual innocence are not cognizable on habeas corpus review); *Cress*, 484 F.3d at 854 (citing cases for the same proposition). Accordingly, in the absence of clearly established Supreme Court precedent establishing a freestanding claim of actual innocence, Petitioner's claims are without merit.

Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and, thus, the concern about the unconstitutionality of executing a defendant who has

shown persuasive evidence of actual innocence is not implicated. *See Cress*, 484 F.3d at 855 ("We first point out the obvious - that this is not, in fact, a capital case."). Accordingly, for this reason alone, Petitioner is not entitled to relief with respect to ground I.

Moreover, the Supreme Court has explicitly held that a defendant may constitutionally enter a guilty plea even while asserting his innocence or declining to admit to the commission of the crime. *See North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970). Accordingly, "[b]ecause a trial court may accept a guilty plea even when it is coupled with a claim of innocence, *a fortiori* a court is not required to permit withdraw of that plea merely because a defendant belatedly asserts his innocence." *McReynolds v. Hoffner*, No 13-13883, 2016 WL 3753532, at *6 (E.D. Mich. July 13, 2016) (quoting *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979)).

In any event, Petitioner's claim of actual innocence is undermined by the factual basis set forth at his plea hearing. When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Garcia*, 991 F.2d at 326. A satisfactory state court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (finding that a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

13

During Petitioner's plea hearing, Petitioner admitted that he was at a residence in Benton Harbor with Lachelle Williams on the day of the incident. (Plea Hr'g Tr., ECF No. 8-11, PageID.293.) When the court asked what Petitioner did, Petitioner responded: "I had an altercation. I had a gun. Leaving the gun, we had gotten into it. It was an altercation. Shots was [sic] allegedly fired or something. And then—and I got pulled over by the policeman. And I left--." (*Id.*, PageID.294.) When the trial court told Petitioner that the court had to know what Petitioner did in order to find that his plea was valid, Petitioner stated that he shot the gun at Williams with the intent to cause great bodily harm. (*Id.*) Petitioner noted that he had the gun pointed at Williams' lower body when he fired the gun. (*Id.*, PageID.295.) Both the prosecutor and Petitioner's counsel were satisfied with the facts as presented. (*Id.*)

Petitioner offers nothing but his speculative assertion that video and audio evidence would show that no shooting occurred at the residence on the date in question. Petitioner, however, has not provided this Court with that evidence, and so he has failed to meet his heavy burden to overcome the state court's finding that the factual basis set forth during the plea colloquy was sufficient to adjudicate Petitioner guilty of the offense. Accordingly, for the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground I.

### B.    Ground II—Ineffective Assistance of Counsel

Next, Petitioner contends that ineffective assistance of counsel renders his plea involuntarily entered. (Pet., ECF No. 1, PageID.7.) In support of this claim, Petitioner contends that counsel did not adequately assist him and instead persuaded Petitioner to accept the plea bargain. (*Id.*) According to Petitioner, counsel "admitted it was true and he knew that [Petitioner] was innocent but refused to draft an order to dismiss charges that [were] never even considered being [committed] by [Petitioner]" on the night he was arrested. (*Id.*) Petitioner suggests that the

14

Michigan Attorney Grievance Commission has agreed with his assertion that counsel was ineffective. (*Id.*)

As an initial matter, Petitioner has failed to provide any documentation from the Attorney Grievance Commission that indicates that the Commission agreed with Petitioner's assertion of ineffective assistance. The only documentation that Petitioner has provided is counsel's letter to the Commission responding to Petitioner's allegations. (ECF No. 6-1.) Notably, in that letter, counsel denied forcing Petitioner to accept a plea. (*Id.*, PageID.96.)

Moreover, Petitioner's claim that counsel forced him to accept a plea agreement is wholly belied by the record before the Court. As discussed *supra* in ground I, Petitioner admitted that on the day of the incident, he possessed a firearm, had an altercation with Lachelle Williams, and fired the gun at Williams' lower body. Those factual admissions defeat Petitioner's claim of actual innocence. Moreover, when asked by the trial court, Petitioner acknowledged that counsel had discussed the case with him and had advised Petitioner of his rights. (Plea Hr'g Tr., ECF No. 8-11, PageID.289–290.) Petitioner stated that he was satisfied with the work counsel had done on his behalf so far. (*Id.*, PageID.290.) Petitioner explicitly denied that anyone had forced, tricked, or threatened him to plead guilty, and he stated that it was his choice to plead guilty. (*Id.*, PageID.291.) Petitioner acknowledged that he was pleading guilty because he was guilty. (*Id.*) After the prosecutor set forth the agreement on the record, Petitioner acknowledged that he understood the agreement, and that no one had promised him anything else to induce him to plead guilty. (*Id.*, PageID.292.) The trial court advised Petitioner that if his plea was accepted, Petitioner could not "come back here later and tell [the court] that [he] pled guilty because of some force, or fraud, or tricks, or promises that [Petitioner did not] tell [the court] about today," and Petitioner stated that he understood. (*Id.*, PageID.292–293.) When asked by the court, the prosecutor and

Petitioner's counsel both indicated that they were unaware of any promises, threats, or other inducements. (*Id.*, PageID.293.) At the conclusion of the hearing, the trial court accepted the plea after finding that it was "made freely, voluntarily, knowingly, accurate, without compulsion, duress, undue influence, [and] the promise of any benefit or leniency." (*Id.*, PageID.295.)

In light of the foregoing, Petitioner has not demonstrated that counsel rendered ineffective assistance by forcing Petitioner to accept a plea agreement despite being aware of Petitioner's alleged innocence. Moreover, Petitioner fails to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. As noted in the amended felony information filed against him, had Petitioner gone to trial and been convicted of all 12 counts, he would have faced life imprisonment as a fourth-offense habitual offender. (ECF No. 8-8, PageID.276.) By pleading guilty to the one count of assault with intent to do great bodily harm less than murder, Petitioner faced only a maximum of 10 years' imprisonment. (*Id.*, PageID.272.) Nowhere does Petitioner provide any evidence that he would have foregone the generous agreement and proceeded to trial.

For the foregoing reasons, Petitioner is not entitled to relief with respect to ground II.

### C.      Ground III—Breach of Binding Contract

As his third ground for relief, Petitioner suggests that his guilty plea should be vacated because the prosecution breached a "binding contract." (Pet., ECF No. 1, PageID.9.) In his Rule 6.502 motion, Petitioner contended that as part of his plea agreement, the prosecution agreed that Petitioner would receive a sentence of 32 to 120 months, but that he ultimately was "given two times that amount at sentencing." (ECF No. 8-18, PageID.349–350.) The trial court rejected Petitioner's argument, summarily stating that there is no "record of an agreement to a minimum sentence of 32 months a[s] claimed by" Petitioner." (ECF No. 8-20, PageID.376.)

A criminal defendant has a due process right to ensure that the terms of his plea agreement are enforced. *See Santobello v. New York*, 404 U.S. 257, 261–62 (1971). Therefore, "when a promise on which a plea rests is not fulfilled, state courts are permitted to determine the remedy." *Haight v. Jordan*, 59 F.4th 817, 856 (6th Cir. 2023) (citing *Santobello*, 404 U.S. at 263). Notably, however, "states are not constitutionally required to provide specific enforcement of a plea agreement; they can instead remedy a plea agreement violation by allowing the defendant to withdraw the guilty plea." *See id.* (citing *Santobello*, 404 U.S. at 262–63; *Mabry v. Johnson*, 467 U.S. 504, 511 n.11 (1984)). Indeed, the United States Supreme Court has noted that when a plea agreement is breached, "no decision from this Court clearly establishes that" the state court is required "to impose the lower sentence that the parties originally expected." *Kernan v. Cuero*, 583 U.S. 1, 3 (2017). Moreover, while *Santobello* establishes that a due process violation occurs when a prosecutor induces a defendant to plead guilty by making a promise with respect to sentencing recommendations and then fails to fulfill that promise, the Sixth Circuit has noted that *Santobello* does not apply to a breach of a plea agreement by a trial court. *See Brown v. McKee*, 340 F. App'x 254, 257 (6th Cir. 2009).

Here, the trial court's conclusion that the record was devoid of any evidence of an agreement to a minimum sentence of 32 months is a factual finding to which this Court must afford the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531. Petitioner offers no evidence, much less clear and convincing evidence, to overcome this presumption. During Petitioner's plea hearing, the prosecutor represented that Petitioner had agreed to plead guilty to assault with intent to do great bodily harm less than murder. (Plea Hr'g Tr., ECF No. 8-11, PageID.287.) The prosecutor noted that Petitioner had "a number of other charges pending" against him. (*Id.*) The trial court represented its understanding that in exchange for Petitioner's

17

guilty plea, the prosecution would be dismissing all other charges and would not charge Petitioner as a habitual offender. (*Id.*, PageID.288, 291.) Petitioner's attorney indicated that the court's understanding was correct, and Petitioner acknowledged that was how he wanted to proceed. (*Id.*, PageID.288.) After the prosecution set forth the agreement on the record, the court asked Petitioner if that was the entire agreement, and Petitioner responded, "Yes." (*Id.*, PageID.292.) Petitioner denied that anyone had promised him anything else to get him to plead guilty. (*Id.*) At no time during the plea hearing did any party represent that in exchange for Petitioner's guilty plea, the prosecution would recommend, or the trial court would impose, a minimum sentence of 32 months.

Moreover, at the beginning of Petitioner's sentencing hearing, the trial court noted that Petitioner's guidelines called for a minimum sentence between 43 and 76 months. (Sentencing Tr., ECF No. 8-12, PageID.301.) After adjusting the scoring of several OVs and PRVs, the trial court noted that Petitioner's revised guidelines range called for a minimum sentence between 38 and 76 months. (*Id.*, PageID.315.) At no point during sentencing did Petitioner raise an assertion regarding his belief that the plea agreement called for a minimum sentence of 32 months.

In sum, the record before the Court clearly establishes that there was no breach of the plea agreement because the agreement did not contain a provision that Petitioner would receive a minimum sentence of 32 months. This Court simply cannot grant habeas relief "by crediting . . . [P]etitioner's subjective version of his understanding of the plea bargain." *Maslonka v. Hoffner*, No. 2:13-cv-14110, 2023 WL 2506406, at *4 (E.D. Mich. Mar. 14, 2023) (citing *Nichols v. Perini*, 818 F.2d 554, 558–59 (6th Cir. 1987)). Accordingly, the trial court's rejection of his claim was not contrary to, or an unreasonable application of, clearly established federal law, and Petitioner is not entitled to relief with respect to ground III.

18

**D.      Ground IV—Failure to Raise Issue on Direct Appeal**

As his fourth and final ground for relief, Petitioner faults appellate counsel for failing to raise a claim on direct appeal. (Pet., ECF No. 1, PageID.10.) Specifically, Petitioner avers that he and appellate counsel were under the impression that Petitioner's sentence was invalid. (*Id.*) Petitioner appears to fault appellate counsel for not raising a claim that the sentence imposed was invalid on direct appeal. (*Id.*)

Petitioner's claim is wholly belied by the record before the Court. As set forth *supra*, on August 9, 2022, Petitioner, through counsel, filed a motion to correct invalid sentence in the trial court. (ECF No. 8-13.) In that motion, appellate counsel argued that PRV 5 was improperly scored at 20 points because the scoring was premised upon nine misdemeanor convictions where there was no record that Petitioner had been represented by counsel. (*Id.*, PageID.325.) However, the record contains a declaration of dismissal, signed by Petitioner and dated November 2, 2022, in which Petitioner agreed that he was voluntarily deciding to "dismiss the appeal raised in connection with [his] conviction(s) and sentence(s)." (ECF No. 8-14, PageID.338.) The declaration indicated that Petitioner reached that conclusion after discussion with appellate counsel. (*Id.*) Thereafter, the parties entered a stipulation in which they agreed that Petitioner's motion to correct invalid sentence would be withdrawn and his appeal would be dismissed. (ECF No. 8-15, PageID.339.) The parties stipulated to such based upon Petitioner's signed declaration. (*Id.*) On November 21, 2022, the trial court entered an order approving the stipulation. (ECF No. 8-17.)

From the foregoing, the Court cannot agree with Petitioner that appellate counsel was ineffective for failing to raise any argument regarding an allegedly invalid sentence on direct appeal. Instead, the record conclusively establishes that Petitioner voluntarily decided to dismiss

19

his appeal after discussion with appellate counsel. Petitioner fails to provide any evidence from which the Court could conclude that counsel acted deficiently by advising Petitioner to withdraw his appeal, or that Petitioner wanted to continue to pursue the appeal and counsel filed the stipulation contrary to Petitioner's wishes. Thus, the fact that a direct appeal was not pursued cannot fall solely at appellate counsel's feet. For these reasons, Petitioner is not entitled to relief with respect to habeas ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

20

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claim was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### <u>Conclusion</u>

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.

Dated:   <u>May 7, 2025</u>                              <u>/s/ Paul L. Maloney</u>
                                                                      Paul L. Maloney
                                                                      United States District Judge